WOOD MERCANTILE COMPANY *v.* COLE.

4-8451                                      209 S. W. 2d 290

Opinion delivered March 15, 1948.

*Barber, Henry & Thurman, Phil Herget* and *Kirsch & Cathey,* for appellant.

*Reid & Roy,* for appellee.

HOLT, J. This case arises under the Arkansas Workmen's Compensation Law (Act 319 of 1939). The material facts appear not to be in dispute.

Audrey H. Cole, the husband of appellee, Sadie Lee Cole, was killed in the course of his employment while working on a welding machine of appellant, Wood Mercantile Company, about twelve weeks after he began work for this company. He was 34 years old at the time, and left surviving his widow and three small children. He was a Veteran of World War II, and had served more than seven years in his last enlistment. He was with an Army Railroad Battalion overseas and did electrical welding and burning in overhauling locomotive boilers, tenders, pressure tanks, etc., and rebuilt defective parts. He began his employment with appellant, Mercantile Company, about six months after his discharge. As a Veteran he had qualified for United States Government Subsistence payments according to the Servicemen's Readjustment Act of 1944, Public Law 346, 38 U. S. C. A. § 693, *et seq.*, which is known as the G. I. Bill of Rights. He was classified in that work as a tractor and automobile mechanic, but he was the only welder that appellant, Mercantile Company, had. During the twelve weeks that he worked for appellant, he and two other veterans were all the employees that appellant had at the shop. Cole's beginning wage was $50 per month and it was contemplated and agreed that at the end of each six month's period of employment, his wages were to be increased until the wage objective of $172.80 per month, the journeyman's wage for this type of work, was reached at the end of a thirty-six month training period. Cole received in addition to the $50 per month from appellant, Mercantile Company, the maximum subsistence payment from the Government which, under this status, was $90 per month, or a total of $140 per month.

Appellants say: "The only question presented by this appeal is: What was the average weekly wage of Audrey H. Cole at the time of his accidental death, June 19, 1946?"

Appellee's claim was first considered by the referee, Lewis M. Robinson, who found that there existed no contract of hire between deceased, Cole, and his employer, and applying the *quantum meruit* rule, found that Cole's

services were reasonably worth $30 per week and made an award of $19.50 per week.

On review before the full commission, there was a finding that a contract of hire existed for an advancing scale of wages beginning at $50 per month and working up to $172.80 over a thirty-six month period. Since Cole, the employee, had only worked twelve weeks, the commission applied the "just and fair" rule contained in § 12 of the Compensation Law, found the weekly wage to be $20 per week and made a compensation award of $13 per week.

The circuit court, on appeal, found as a matter of law that the subsistence allowance of $90 per month paid to Cole by the Government must be considered as part of Cole's wage within the meaning of the Compensation Law and when this sum is added to $50 per month, paid by the employer, appellant, Mercantile Company, Cole's total wage was $140 per month which entitled the claimants, appellees, to compensation at the rate of $20 per week.

Appellants contend that the award of compensation should have been $7.50 per week, based upon a monthly wage of $50.

The question presented appears to be one of first impression.

We have reached the conclusion that the findings of the circuit court were correct and that its judgment should be affirmed.

When we give to the provisions of the act that liberal construction to effectuate its aim and purpose, which we have many times held we must do, *Elm Springs Canning Company* v. *Sullins*, 207 Ark. 257, 180 S. W. 2d 113, we think any other view than that adopted by the circuit court would unduly narrow the application and effect of those provisions.

Section 12 of the act provides: "Except as otherwise specifically provided the basis for compensation under this Act shall be the average weekly wages earned

by the employee at the time of the injury, such wages to be determined from the earnings of the injured employee in the employment in which he was working at the time of the injury during the period of 52 weeks immediately preceding the date of the injury divided by fifty-two. . . . Wherever allowances of any character are made to an employee in lieu of wages, or specified as part of the wage contract, they shall be deemed a part of his earnings.''

Section 15 (b) provides: ''The compensation payable under this section for the death of an employee shall be limited to 65% of the average weekly wages of such deceased employee, for a period of 450 weeks, but in no case shall such compensation exceed the total sum of $7,000. . . .''

Section 2 (h) of the act provides: '' 'Wages' means the money rate at which the service rendered is recompensed under the contract of hiring in force at the time of the accident, including the reasonable cash value of board, rent, housing, lodging or similar advantage received from the employer and including gratuities received in the course of employment from others than the employer when such gratuities are received with the knowledge of the employer.''

Under the plain terms of the latter section, wages means not only the monthly payment of $50 by the employer to Cole for his services, but they include ''gratuities received in the course of employment from others than the employer when such gratuities are received with the knowledge of the employer.'' It is conceded here that the employee, Cole, was receiving subsistence of $90 each month from another (U. S. Government) than the employer and the employer knew it. Cole's wages under the program, if his services were satisfactory, were to be increased $20 at the end of each six months' period, until he had reached a journeyman's wage of $172.80 per month. It appears to be undisputed that without some assistance from the Government, Cole would not have been hired by appellant, Mercantile Company. Such was the effect of the testimony of appellant's (Mercantile

Company) foreman, Max Weir. It is also not denied that Cole could have earned approximately $5 per day, or $30 per week, doing the same character of work that he was performing for appellant, Mercantile Company. We think it obvious, therefore, that appellant, employer, benefitted directly from the Government payment to Cole.

It is of strong significance, that as an inducement and aid to the Veteran, entering into such program, the Serviceman's Readjustment Act, *supra*, provided that the Government would pay to such veteran trainee of Cole's status, subsistence allowance of $90 per month, which amount would be decreased in proportion to, and at the same intervals that the employee's (Cole's) wages were increased by his employer. If no relationship existed between the subsistence pay and that paid by the employer, why the provision for the decrease in the former as the latter is increased.

The Service Bulletin containing the regulations for the On-the-Job training program for veterans provides: (T.80k): "XI. VETERANS' PAY. Beginning wage— It is not the school's responsibility to decide what the veteran will be paid, but the beginning wage for the veteran in training should be the same the employer pays other beginners in that occupation. This training program was not organized to allow employers to hire veterans at a lower rate than other beginning employees. . . . The intention of the law is to benefit the veteran. The program should not be used to hire a veteran at a lower wage than other beginning workers."

While the Workman's Compensation Law of New York (Chapter 816 of the Laws of 1913 as amended) in its definition of "Wages" does not expressly include gratuities, yet, where gratuities are contemplated, as a part of the compensation, the courts of that state have included tips.

"Where a taxicab driver was accustomed to receive a constant amount in tips, and this amount was taken into consideration by this employer in fixing his wages, and the tips were thus an advantage received from the

employer, in determining the average weekly wage of the employee as a basis of award, the tips should be added to regular wages paid by the employer in determining the average weekly wage." *Sloat et al.* v. *Rochester Taxicab Co., et al.,* 177 App. Div. 57, 163 N. Y. S. 904, 116 N. E. 1076, (Headnote 2).

"Pullman porters, restaurant waiters, taxicab drivers, and others receiving tips from the third parties are entitled to have such tips considered in determining the amount of their awards for injuries under the Workmen's Compensation Law (Consol. Laws, c. 67), providing the employers in such cases contemplate and intend that their employees shall receive such gratuities. In such cases the compensation paid by the employers is correspondingly less, and they are therefore benefitted by such gratuities." *Begendorf* v. *Swift & Co.,* 183 N. Y. S. 917, (Headnote 1), 193 App. Div. 404).

Of particular significance also is the last sentence in § 12, *supra,* as follows: "Wherever allowances of any character are made to an employee in lieu of wages or specified as part of the wage contract, they shall be deemed a part of his earnings."

We think the $90 subsistence paid Cole by the Government, in the circumstances here, was a part of the wage contract and therefore became a part of his earnings and wages.

Appellant, Mercantile Company, was thus enabled to hire Cole, and Cole was induced thereby to accept employment, at a cheaper pay, or to accept a wage of $11.54 per week for a week of 57 hours when, as indicated, his services were worth, and he could have earned elsewhere $30 per week or $5 per day.

Webster defines "gratuity" as something given freely or without recompense, a gift; something voluntarily given in return for a favor or service; a bounty, a tip."

As above noted, in New York, even where there are no provisions similar to our own in the compensation law respecting gratuities, the courts there have included tips and similar gratuities as part of the wage. Our

own act by specifically including gratuities has, we think, made it clear that the lawmakers intended that gratuities arising in circumstances like those with which we are here dealing should be a part of the wage when computing compensation.

Appellants argue earnestly that when our Workmen's Compensation Law was enacted in 1939 subsistence payments to veterans was unheard of and not contemplated and therefore that such payments cannot be considered as gratuities within the meaning of the act. We cannot agree. We think under the general rule of statutory construction, and especially when considered under the liberal interpretation that we must give our compensation act in favor of claimants, "gratuities," as used in the act, includes subsequent situations which develop later, as here.

The rule is announced in Amer. J. P., Vol. 50, § 237, p. 224: "On the other hand, the fact that a situation is new, or that a particular thing was not in existence, or was not invented, at the time of the enactment of a law, does not preclude the application of the law thereto. The language of a statute may be so broad, and its object so general, as to reach conditions not coming into existence until a long time after its enactment. Indeed, it is a general rule of statutory construction that, in the absence of a contrary indication, legislative enactments, which are prospective in operation and which are couched in general and comprehensive terms broad enough to include unknown things that might spring into existence in the future, even though they are words of the present tense, apply alike to new situations, cases, conditions, things, subjects, methods, inventions, or persons or entities coming into existence subsequent to their passage, where such situations, cases, conditions, things, subjects, methods, inventions, persons, or entities are of the same class as those specified and can reasonably be said to come within the general purview, scope, purpose, and policy of the statute, the mischief sought to be prevented, and the evident meaning of the terms used."

Finding no error, the judgment is affirmed.