475 P.2d 770

Charlene A. CHRISTIAN, Petitioner,

v.

INDUSTRIAL COMMISSION of Arizona, Respondent,

Pan American World Airways, Inc., Respondent Employer,

The Travelers Insurance Company, Respondent Insurance Carrier.

No. 1 CA–IC 413.

Court of Appeals of Arizona, Division 1, Department B.

Oct. 22, 1970.

Review Denied Jan. 5, 1971.

Lawrence Ollason, Tucson, for petitioner.

Donald L. Cross, Chief Counsel, Phoenix, Industrial Commission of Arizona, Burch, Cracchiolo, Levie & Guyer, by Richard T. Ball, Phoenix, for respondents Pan American World Airways, Inc. and Travelers Ins. Co.

JACOBSON, Judge.

This review of an award of the Industrial Commission suspending benefits requires us to determine whether the procedural steps leading to the suspension were properly undertaken.

On March 30, 1962, the Commission entered its final award finding that petitioner had not sustained any permanent physical disability as a result of an accident which occurred on February 12, 1962. Accordingly, she was not awarded any continuing compensation for loss of earning capacity. Thereafter on March 1, 1963, she filed her petition for reopening, alleging new and additional disability resulting from said accident. Based upon the petition for reopening, the Commission on January 13, 1966, awarded petitioner compensation for unscheduled permanent partial disability in the sum of $140.49 per month. This latter award by the Commission was based upon the referee's report and summary which contained the following statement:

> "While the applicant's condition may improve to the point that she may be employable on a full time basis, at the present time the evidence does not justify such a finding but merely justifies her position that a part-time job is all that she can engage in."

In the award the Commission retained jurisdiction for the purpose of reopening the award upon a showing by either the employer, the employee or the insurance carrier of appropriate changed conditions.

Prior to the entry of the 1966 award, petitioner engaged as her counsel the firm of Hirsch, Van Slyke, Richter & Ollason, and notified the Commission of such appointment by letter dated February 19, 1965. In that letter she directed the Commission to " * * * mail any and all claim reports, warrants or checks * * * ." to said counsel's office. By letter dated April 19, 1965, attorney Ollason emphasized that all contact with the petitioner was to be made through him, stating:

> "It would be appreciated if in the future you would direct all correspondence

to this office. This correspondence to include any and all documents, checks, warrants, reports or requests."

On September 17, 1965, the Commission entered an order authorizing the petitioner to leave this state to reside "at El Paso, Texas" with her husband. The Commission was not advised as to the petitioner's specific address in El Paso, and all contact with the petitioner by the Commission or the respondent insurance carrier was made through the address of counsel. Later, in March of 1966, as a result of attorney Ollason's complaints to the Commission, the respondent private insurance carrier agreed to mail all future checks to claimant in care of her counsel.

The Commission's file does not reveal any further activity for a period of approximately two years. However, on February 7, 1969, the respondent-carrier wrote a note to the Commission requesting the present address of petitioner. Mr. Ollason had previously refused to give this information to the carrier. By letter dated February 11, 1969, the Commission requested of counsel that it be advised of such address. Mr. Ollason emphatically refused to give his client's address to either the Commission or the respondent-carrier. The respondent-carrier's request for the petitioner's address was apparently made in connection with an investigation which it was making to determine whether petitioner was still disabled.

On April 14, 1969, the respondent-insurance carrier filed a petition with the Commission seeking to suspend benefits.

The petition alleged as follows:

"[E]vidence * * * indicates that there is presently no loss of earning capacity or that applicant's earning capacity has increased greatly from that amount set forth in finding No. 10 of the Commission's decision of January 13, 1966, and claimant is no longer entitled to a payment of $140.49 per month."

Attached to the petition was an affidavit of Mr. C. W. Kerr, Manager of the respondent-insurance carrier's Claims De-partment, affirming the allegations of the petition.

Pursuant to this petition an order to show cause was issued to petitioner and a hearing thereon set for June 26, 1969. Copies of these documents were mailed to petitioner's last known address and to petitioner's attorney. At the request of the insurance carrier a subpoena duces tecum was also issued by the Commission to the petitioner, directing petitioner to produce at this hearing "any and all records pertaining to income for the years 1966 through 1969 including without limitation, W-2 forms, income tax returns, salary stubs and earnings statements from any source." Service of this subpoena was made by mail on petitioner's attorney because the previous documents sent to petitioner's last known address were returned marked "no longer at this address, no forwarding address left."

At the time set for hearing, petitioner's attorney appeared, but no appearance was made by petitioner herself. At this hearing the following occurred:

"The hearing officer: * * * applicant did not show up, right?

"Mr. Ollason: I represent the applicant.

"The hearing officer: Did you bring the records which were subpoenaed?

"Mr. Ollason: I brought no records because I have no records pursuant to that subpoena.

"The hearing officer: Of the applicant?

"Mr. Ollason: No, sir.

"The hearing officer: She brought none to you?

"Mr. Ollason: *I* was not subpoenaed.

"Mr. Milam: Right.

"The hearing officer: I take it that Charlene Christian did not accept the subpoena personally?

"Mr. Ollason: *I am representing Charlene Christian.* If she was served personally with subpoena I don't believe

the record indicates that. (Emphasis added.)

"The hearing officer: Her copy was served on you, was it not?

"Mr. Ollason: Her copy was mailed to me, whether it was her copy or a copy just mailed to me I do not know. It is my understanding of a subpoena, it is to be served on the party and not on the party's attorney or her mother or father or someone else in someone's house. It is my understanding the subpoena must be served upon the individual.

"The hearing officer: Don't the rules of the Industrial Commission require the applicant to keep the Commission advised at all times of her present address?

"Mr. Ollason: *There is a letter of authority in the file, everthing is to come to me,* but there is no rule that I know of in the Industrial Commission that the applicant must inform the Commission of her address. Any correspondence you want delivered to Mrs. Christian I will be happy to deliver it, I am her lawyer. (Emphasis added.)

"The hearing officer: Did you deliver this subpoena duces tecum?

"Mr. Allason: *I doubt very seriously if I delivered it to her."* (Emphasis added.)

No other evidence was presented at this hearing. On the recommendation of the hearing officer, the Commission suspended petitioner's benefits "until such time as applicant's compliance with the Rules of the Industrial Commission."

Petitioner by her appeal raises no issue as to the propriety of the actions of the Commission suspending benefits, if the actions leading up to the suspension were valid. Rather, petitioner attacks the propriety of the issuance of an order to show cause and setting the matter for hearing based on the petition filed in the case and the effect of the service of subpoenas.

Petitioner first contends that respondent's petition did not comply with the Commission's Rule 54, dealing with termi-nation of disability payments and therefore the ensuing hearing or order to show cause held pursuant to that petition was invalid.

Commission Rule 54 in essence requires a petition to be filed with the Commission showing good cause for the termination of the benefit payments. This "good cause" requirement of the petition is complied with if it is accompanied by an affidavit in the language of the Rule, "that the employee has resumed work." Upon filing the petition, the Commission shall then either set the matter for hearing or issue an order to show cause to the opposing party.

■ The petition here speaks in terms of the claimant presently having "no loss of earning capacity," while the Rule speaks in terms of "the employee has resumed work." We believe the language of the petition clearly falls within the import of the language of the Rule and that this petition being verified, complies with the affidavit requirement of the Rule. We hold that the petition filed by respondent insurance carrier and verified by its claims manager on its face complied with the "good cause" requirement of Rule 54 of the Industrial Commission. There is nothing that appears in the record before us to indicate that the allegations contained in the petition are false, nor, in view of the Commission's action in accepting this petition, may we indulge in any presumption that the allegations are in fact false, in absence of proof to the contrary. Having held the petition was sufficient, it follows that the Commission's action in setting this matter for an order to show cause hearing was proper.

■ Petitioner next argues that the respondent's request for a subpoena duces tecum against the petitioner in some manner changed petitioner's status in this procedure from a party to that of a mere witness for the respondent and therefore Rule 35 of the Commission concerning subpoenaing of witnesses must be complied with, including the tender of a witness fee, and personal service on the petitioner. We reject this argument out of hand. The sub-

poenaing of a party to an action before the Commission does not transform that party to the status of a mere witness who is then entitled under the Commission's rules, to be personally served and tendered witness fees.

■ Rule 43 of the Commission makes it clear that service upon parties to an action before the Commission may be accomplished by mail. Moreover, Rule 44 of the Commission states "service upon the attorney who has appeared in behalf of a party will constitute service upon such a party." Both of these rules have been upheld by this court and the service provided therein held valid. Mueller v. Industrial Commission, 9 Ariz.App. 147, 450 P.2d 113 (1969).

■ The citation of Rule 44 of the Commission also answers petitioner's contention that service upon her attorney of the subpoena duces tecum was not service upon her, the Commission having the power to make and interpret rules concerning its own procedures. *See* Parsons v. Industrial Commission, 98 Ariz. 74, 402 P.2d 20 (1965).

Since petitioner does not raise any issue as to whether the Commission had the power to suspend her benefits on the grounds of her failure to appear at the order to show cause hearing, we hold that the procedural steps leading up to that hearing were validly exercised by the Commission and therefore affirm the award.

Award affirmed.

EUBANK, P. J., and HAIRE, J., concur.