## SUPERIOR IMPROVEMENT COMPANY *v.*
### Lillian Aldridge HIGNIGHT

73-8                                        493 S.W. 2d 424

Opinion delivered April 30, 1973

*Moses, McClellan, Arnold, Owen & McDermott,* for appellant.

*Smith, Williams, Friday, Eldredge & Clark,* by: *Boyce Love,* for appellee.

Lyle Brown, Justice. This is a workmen's compensation case. Appellee-claimant asserted that she suffered a compensable fall in the course of her employment and was sustained by a unanimous commission and the circuit court. Appellant here contends that the finding that claimant suffered a fall on appellant's premises is not supported by substantial evidence; that if she did suffer such an occurrence it was not the cause of claimant's injuries; and that error was committed in not finding that the healing period ended on or about September 1, 1971.

Appellee, a sixty year old widow, was a telephone solicitor for appellant at the place of business on Broadway in Little Rock. Appellant was engaged in the business of selling and installing aluminum siding, doing quite a volume of business. Solicitors would obtain business by calling prospects listed in the telephone directory. If a call resulted in a favorable reception, the name of the prospect would be given to a solicitor who would contact the prospect and endeavor to firm up a sale.

If appellee-claimant sustained a fall on appellant's premises, then here are the facts in capsule form which sustain the contention. Appellee and Phyllis Wyatt were on duty at the company headquarters on the night of July 20, 1971, working in different rooms which appear to have been adjacent. We gather that there were four offices which joined. Between the warehouse and the offices there is a glass and appellee was sitting with her back to the glass with her headphone in place. Her attention was attracted by a noise or a shadow which caused appellant to look up. Through the glass she could see a man "in a staggering position and pathetic looking." She hurriedly locked the door just to her back, which door was between the warehouse and the office. She called to Phyllis to lock her door because a man might be coming in on them. Phyllis locked the back door and then went to lock the door to the manager's office. At the same time appellee went from her desk to the front office to lock the door that led in off the street. She was hurrying because she wanted to beat the man to the door. In the front office there was a box on the floor containing a substantial amount of literature and it was in appellee's path. The box was almost as high as appellee's knees. She tripped over the box and fell completely over it and on to a floor of concrete and tile. She hurriedly scampered to her feet and reached the door just as the man was reaching for the door knob. She managed to get it locked and the man turned and went down Broadway.

Phyllis walked into the front office and appellee reported the fall and complained of being hurt. They then went into appellee's office and appellee sat down. Phyllis cleaned appellee's hands, arms and knees, all

of which were dirty from the fall. Phyllis did not see appellee fall because she was busy at the time of the incident locking the door which led to the warehouse. Phyllis verified that she got a glimpse of the intruder; that appellee reported the fall to her; that she cleaned appellee's hands with a rag because they were dirty; and that she bathed appellee's legs with alcohol. From the evidence abstracted we think it sufficient to reasonably deduce that appellee suffered a fall.

Appellant next contends that any fall appellee may have received was not the proximate cause of her injuries. Appellee is extremely overweight and had admittedly suffered for many years with intermittent attacks of thrombophlebitis in her left leg. At the time of the described occurrence her leg was swollen from that ailment and she kept it elevated while doing her telephoning. Therefore, says appellant, the condition of the knee was attributable to the phlebitis; appellant introduced medical testimony to that effect.

Appellee sought no medical aid that night, although she complained to Phyllis that she hurt her knee, that she believed she had a fractured rib, and that her breast was injured. The next morning the pain was so great that she went to the emergency room of the hospital at about 7:30 a.m. and had them call Dr. Hoover. The doctor hospitalized appellee, where she remained under his treatment for ten days. "She was complaining of difficulty in breathing and pain in her knee. We examined her and took some x-rays, and she had a massive hematoma of her breast and was tender on her left side, and her knee was painful. The left knee was bruised and discolored, but x-rays of her knee and ribs were negative. I put a rib splint on her, and she was unable to walk so I hospitalized her." The doctor concluded, with respect to the pain in the rib area, that appellant had a hemorrhage beneath the membrane which nourishes the bones in the ribs. "This condition causes one to hurt worse than broken ribs. . ."

Appellant introduced the testimony of Phyllis to the effect that the latter saw a bruise on the knee at the time she administered first aid. Dr. Hoover said he saw no

evidence of an old bruise and that if the ruptured blood vessel is close to the skin the discoloration will occur instantaneously. "I saw bruises and discoloration the morning I treated her and it was ten times worse five days later." It was also the doctor's opinion that the fall was the cause of a flare-up of the thrombophlebitis.

When the testimony of appellee and Dr. Hoover is taken together we are unable to say that the commission was in error in finding that the injuries were attributable to the fall.

Appellant's final contention is that appellee's healing period ended on or about September 1, 1971. The contention is based substantially on the fact that, as appellant interprets the testimony, Dr. Hoover testified that by September 1 the patient had made considerable progress and consideration should be given to going back to work. (The controversy about the ending of the healing period arises from the fact that appellee had a flare-up with her knee and was again hospitalized from September 18 to October 4). Dr. Hoover explained the back-to-work suggestion in these words:

> On September 3 I suggested that she enlarge her activities by attempting to drive her car and if she could sustain a normal degree of activity then I would have assumed that she could go to work. However, before she got through with the test period, she developed additional problems and got to where she definitely could not work.

Dr. Hoover further testified that he attributed the knee problem in September to the fall in July. "The thrombophlebitis flare-up that I saw on September 14, in my opinion, was caused by the fall and injuries that she got on July 20, 1971."

We are concerned only with whether there was substantial evidence to support the commission. *Allied Telephone Co.* v. *Rhodes*, 248 Ark. 677, 454 S.W. 2d 93 (1970). In evaluating the evidence we interpret it in a light most favorable to the commission's findings. *McCollum* v. *Rogers*, 238 Ark. 499, 382 S.W. 2d 892 (1964). And, as said

in *McCollum,* on disputed questions of fact we cannot set aside the commission's findings. Even though the evidence would support another conclusion, or if the preponderance of the evidence would indicate a different result, we still affirm the commission if reasonable minds could reach the conclusion reached by the commission. *Oak Lawn Farms* v. *Payne,* 251 Ark. 674, 474 S.W. 2d 408 (1971).

Affirmed.