EMPLOYERS MUTUAL LIABILITY INSURANCE COMPANY and another, Appellant, v. DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS and another, Respondents.

*No. 140.  Argued January 2, 1974.—Decided February 18, 1974.*
(Also reported in 214 N. W. 2d 587.)

For the appellants there was a brief by *Walter D. Thurow* and *Hart, Wightman & Thurow,* all of Madison, and oral argument by *Walter D. Thurow.*

For the respondent Department of Industry, Labor & Human Relations the cause was argued by *Donald P. Johns,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

HEFFERNAN, J. Ernst Sindermann was employed as a welder for the Weimer Welding and Cutting Company in May 1967, when he alleges an injury to his left eye when, in the course of his work, a small steel sliver pierced the lens. Subsequently the lens was removed. A contact lens was prescribed and, with the use of such lens, double vision was avoided and visual acuity was restored to 20/20.

The loss of central visual acuity is apparently not contested, but on this appeal the employer argues, first, that there was not sufficient evidence to support a finding that the employee sustained a compensable injury in May of 1967. It argues that, even if he did, the department erred when it increased the examiner's award from 30.67 percent disability to 65.33 percent. They claim that the contact lens which was substituted for the natural lens restored the binocular vision of the eye, and that the department erred when it did not consider the correction afforded by the contact lens a "useful" correction.

The record demonstrates that the department properly found that the injury occurred in the course of the employee's work. There was evidence to support that finding.

Sindermann testified at the hearing that on the day of injury he had been sent by his employer to the Milport Chemical Company to repair a chemical mixer. He stated that, while attempting to straighten a bolt in the mixer, he was pounding on a drift pin when something flew into his eye and caused immediate discomfort.

Although he was not sure of the exact date, the president of the Weimer Company testified that he had been informed of Sindermann's eye injury. He acknowledged that he had received notice and did not dispute the May 3d date. Raymond C. Bush, the foreman, also testified that, early in May, Sindermann, when returning from

the Milport Chemical Company, complained about an injury to his left eye. Even though the exact date may not have been established, it is established by the evidence that, sometime early in May, Sindermann sustained an eye injury in the course of his employment.

It is also argued that there was no testimony to relate the alleged accident of May 3d to the eye surgery and the removal of the lens of the left eye.

After Sindermann's initial complaint, he was examined, at the request of the employer, by a Dr. Brand on May 12, 1967. Dr. Brand found no foreign body in the eye. Subsequent examinations, in the judgment of Dr. Brand, failed to reveal the presence of a foreign body or of a corneal injury. It was his opinion that, had the injury of May 3d been caused by a sliver piercing the cornea, the pain would have been too intense to defer medical help until May 12th.

It was acknowledged by the employer that, between the date of the alleged injury and the resort to other medical advice, Sindermann complained of double vision and headaches. He wore a patch over his left eye during a portion of this period.

On October 2, 1967, Sindermann was examined by Dr. Giller, who found a scar on the cornea. X rays revealed a metal sliver in the lens. It was also found that a cataract had been caused by the injury. Dr. Giller, commenting on Dr. Brand's statement in respect to the intensity of pain as a result of the corneal injury, said that the signs and symptoms would vary from one individual to another.

The testimony of Sindermann, Dr. Giller, Bush, and Weimer himself amply support the findings that the surgery and impairment of vision were caused by the May 3d industrial accident. From a legal viewpoint, the contrary testimony of Dr. Brand is irrelevant, since the findings that were made were supported by other medical

evidence and opinion. Only a question of credibility is raised when different medical opinions are elicited. "Where medical testimony is in conflict, the weight thereof and the credibility of the witnesses is for the commission to determine." *Van Valin v. Industrial Comm.* (1962), 15 Wis. 2d 362, 367, 112 N. W. 2d 920.

The employer and his insurance company argue that the finding in regard to the accident itself and the finding in respect to the consequences of the injury should be set aside, because the disputed testimony reveals a legitimate doubt. All disputed testimony, if probative and relevant, raises a legitimate doubt until that doubt is resolved by the finder of fact. But the question of legitimate doubt is not a test to be superimposed by a reviewing court to second guess a fact finder!

If the department itself had a legitimate doubt about a finding, that doubt will, in some cases at least, be respected even though under one view of the evidence the doubt could be resolved. The trial judge properly stated: "Where the commission . . . has not evinced the legitimate doubt, it is not to be superimposed upon it by a reviewing court." There is credible evidence to support the department's findings.

The second major attack on the department's order is in respect to their position that a contact lens did not provide a useful correction.

There is no dispute in regard to the permanent disability in respect to the actual eye injury. There is also agreement, or at least no contest, in respect to the findings of loss of visual efficiency except as they relate to binocular vision. Dr. Giller reported that, after surgery, Sindermann's binocular vision was moderately good with a contact lens and there was no diplopia present. Diplopia, occasioned from a lens loss, cannot be rectified by ordinary glasses because, "the image produced upon

the retina with a lens in a pair of spectacles is different in size than if the lens were at its proper location, within the ball of the eye." 3 Gray, *Attorneys' Textbook of Medicine,* p. 749, par. 62.48. The brain is unable to reconcile the two images of different size. Double vision results.

Without the correction afforded by a contact lens, the record demonstrates that Sindermann sustained the loss of binocular vision as well as impairment to his central visual acuity. Given that fact, the department evaluated the visual disability at 65.33 percent. Unless the department erred on not finding the contact lens was a "useful" correction, its finding and order must be sustained.

Counsel for the appellants acknowledged that the word, "useful," in the department rules has some meaning, and conceded that the mere fact that a correction of binocular visual difficulties was afforded by a contact lens did not necessarily in all cases make the correction a "useful" one.

At the time of review of the findings in the circuit court, the department explained that it relied upon a 1958 article of the American Medical Association's Committee on Medical Rating of Physical Impairment, *Guides to the Evaluation of Permanent Impairment,* Journal of American Medical Association, Vol. 168, No. 4, page 475, for support of its position that contact lenses did not afford a "useful" correction. We agree with the trial judge, an acknowledged authority on the subject of judicial notice, that, under the circumstances, judicial notice could not be taken that a correction afforded by a contact lens was not a "useful" correction. *See Lewandowski v. Preferred Risk Mut. Ins. Co.* (1966), 33 Wis. 2d 69, 76, 146 N. W. 2d 505, for conditions under which judicial notice may be taken of technical treatises and

pamphlets. *See also* sec. 227.10 (3), Stats.,[1] for official notice that may be taken of recognized facts in an administrative hearing.

On oral argument in this court, however, counsel for the department stated that, since 1958, the regulation adopted by the department has been uniformly interpreted to mean that a contact lens does not afford a "useful" correction. It appears that this uniform interpretation since 1958 may be based on the 1958 article, but it is the uniform interpretation by the department of its own rules and regulations over a period of time that gives that course of conduct legal effect. It is not the source or reason for that interpretation that controls. If the interpretation does not appear to be irreconcilably contrary to the plain meaning of the rule or the regulation itself, it may be accepted. This court has said:

"[G]reat weight should be given to an administrative-agency interpretation and application of its own rules—unless plainly erroneous or inconsistent with the regulations so interpreted." *Josam Mfg. Co. v. State Board of Health* (1965), 26 Wis. 2d 587, 601, 133 N. W. 2d 301; *see also State ex rel. Durando v. State Athletic Comm.* (1956), 272 Wis. 191, 195, 75 N. W. 2d 451.

There may be doubt in the minds of a court, as there was in the instant case, that the interpretation was correct, but the interpretation here is not plainly erroneous and is consistent with the terminology of sec. IND 80.26 (2) (a) 2, of the Wis. Adm. Code, which expressly relates evaluation of visual disabilities to corrections made with "glasses."

---

[1] "227.10 . . . In contested cases:

". . .

"(3) Agencies may take official notice of any generally recognized fact or any established technical or scientific fact; but parties shall be notified either before or during hearing or by full reference in preliminary reports or otherwise, of the facts so noticed, and they shall be afforded an opportunity to contest the validity of the official notice."

We conclude, however, that the trial judge correctly held that a contact lens did not provide a "useful" correction.

It should be noted, moreover, that the regulations relating to loss of visual efficiency were essentially formulated by the American Medical Association in accordance with the report upon which the department relied. *Moen v. Industrial Comm.* (1943), 242 Wis. 337, 8 N. W. 2d 368, points out that the rules then in effect were formulated in accordance with American Medical Association standards. The revision, effective at the time of this proceeding, is almost identical with that in effect at the time of *Moen.* Where there is evidence that the rules are founded on a particular source, it is reasonable to resort to such source to interpret the rule. Ultimately, however, it is the course of reliance on the source, the uniform administrative interpretation of the rule, that gives the interpretation validity and not the source itself.

*By the Court.*—Judgment affirmed.