## SOUTHWESTERN BELL TELEPHONE
### Company *v.* Charles M. BROWN

73-113                                       505 S.W. 2d 207

Opinion delivered February 19, 1974

*Donald K. King, Ronald T. LeMay,* and *William A. Hough,* for appellant.

*Paul D. Capps,* for appellee.

FRANK HOLT, Justice. The appellant seeks reversal of the Workmen's Compensation Commission's order, affirmed by the circuit court, which awarded retroactive benefits upon approval of appellee's petition for a change of physician. Appellant contends the commission's award "contradicts the law." (Ark. Stat. Ann. § 83-1311 [Repl. 1960].)

Appellee Brown suffered an admittedly compensable back injury in May, 1970, as an employee of the appellant. The appellant company's physician referred appellee to Dr. Ross, an admittedly qualified orthopedic surgeon, who prescribed conservative treatment until August, 1970, when appellee returned to work. He was paid full salary during this period of disability. In March, 1971, after reexperiencing pain in his back and a leg, a neurosurgeon excised a bulging L5 disc and Dr. Ross at the same time performed a surgical fusion. Appellee returned to work in July, 1971, after receiving payment of his full salary for this period of his disability. The operation did not relieve the appellee of his pain. However, he was advised by the appellant that a change of physicians would not be permissible unless approved by the commission. Consequently, on September 17, 1971, appellee filed a petition with the Workmen's Compensation Commission for a change of physician to Dr. Chakales. The petition was controverted by appellant and on November 22, 1971, a referee conducted a hearing and (September 19, 1972) granted appellee's petition. During this interval, or until June, 1972, both parties presented to the referee numerous medical reports and opinions which reflect a distinct divergence of views between Drs. Ross and Chakales with respect to the solidity of the fusion operation performed by Dr. Ross in March, 1971.

The commission, in upholding the referee's opinion, found that the appellee claimant continued to experience pain after his first operation and his healing period had not ended and therefore he should be allowed a change in physician. The appellant was ordered to pay Dr. Chakales' medical bills retroactively and in the future. The commission also ordered appellant to pay appellee temporary total disability benefits from October 7 through November, 1971, during the time appellee was hospitalized by Dr. Chakales for

an examination. The appellant had not paid appellee any wages or benefits during his hospitalization. The circuit court affirmed the commission's decision.

Appellant agrees that since the commission has approved the appellee's petition for a change of physician, it is obligated to pay appellee Brown's medical expenses and temporary disability benefits from and after September, 1972, the date of the referee's award which was approved by the commission. Appellant asserts, however, it is not obligated to pay appellee disability benefits or his medical expenses which were incurred before approval of the petition. That interval is from October, 1971, (appellee's first treatment by Dr. Chakales which followed the filing of his petition for change of physician in September, 1971) to September, 1972. Appellant takes the position that § 81-1311 does not allow these interim payments, because they were incurred later than six months after the injury; appellee was advised by the appellant it would not be responsible for such expenses unless approved by the commission; and, further, that the commission does not have the authority to authorize and require a retroactive payment of benefits upon the approval of a change of physician. We do not agree.

The responsibility placed upon the employer by § 81-1311 is:

> The employer shall promptly provide for an injured employee such medical, surgical, hospital and nursing service, and medicine, crutches, artificial limbs and other apparatus as may be necessary during the period of six [6] months after the injury, or for such time in excess thereof as the Commission, in its discretion, may require. If the employer fails to provide the services or things mentioned in the foregoing sentence within a reasonable time after knowledge of the injury, the Commission may direct that the injured employee obtain such service or thing at the expense of the employer, and any emergency treatment afforded the injured employee shall be at the expense of the employer.

> The Commission may order a change of physicians at the expense of the employer when, in its discretion, such

change is deemed necessary or desirable.

In the case at bar, we are presented for the first time with the question of the financial responsibility of an employer for medical bills (as well as disability benefits) incurred on examination by a second doctor, selected by the employee, between the time of employee's petition for a change of doctors and approval of the petition.

Appellant relies upon *Caldwell* v. *Vestal*, 237 Ark. 142, 371 S.W. 2d 836 (1963), for the proposition that the claimant acts at his peril in selecting his own doctor in preference to the employer's and must show successful treatment from his selected doctor before the employer is responsible. However, in *Caldwell*, the claimant did not petition for a change of physician before submitting himself to another doctor.

In the instant case, the claimant actually petitioned the commission for a change of physician before making a change. Furthermore, his petition was subsequently approved by the referee and commission. It is true, on the record before us, that the uncertain physical condition of the appellee claimant is yet undetermined; however, the commission had for its consideration factual disputes between the doctors as to the necessity or desirability of reattempting a fusion as a result of the removal of the bulging disc. Radiologists were also in disagreement. Appellee claimant continued to see Dr. Ross, who considered the fusion solid, on the advice of his attorney until October, 1971, or approximately one month after he had filed his petition for a change of physician. Dr. Ross stated in his report that he did not see "any reason why Mr. Brown could not return to full heavy labor" although he could not explain appellee's continued pain. A few days later, Dr. Chakales stated in his report that the appellee's condition should be repaired surgically with a reattempt at fusion. Other medical reports continue to reflect this medical disagreement. The last one was dated June, 1972. In this report, Dr. Chakales persisted in his opinion, after reviewing x-rays, that further surgical intervention and exploration were necessary to determine whether an extension of the fusion was needed to relieve the existence of pain. Following this report the issue was submitted to the referee who filed his opinion approving the change of physi-

cian in September, 1972, or approximately three months later.

The appellee testified that his pain at times was so unbearable that he could "barely walk;" he felt as if he was going to "come apart" at his lower back and he was gradually coming "unglued" because of his pain; appellant's doctor would tell him "it's nothing to worry about" and that "the fusion was good;" he kept seeing appellant's doctor upon the recommendation of his attorney in order to determine what improvement he had experienced; finally, he had to quit work because of the pain and before seeing Dr. Chakales; at the time of the hearing (November, 1971), he was unable to bend or stoop and was unable to perform heavy labor such as climbing poles and stringing lines, which was the nature of his work with the appellant; and if his petition for a change of physician were approved, he was willing to have a second operation on his back.

It cannot be said that the conflicting evidence, when viewed most favorable to the appellee, is insubstantial to support the commission's finding. Furthermore, if there is any doubt about the power and authority of the commission, in the circumstances of the case at bar, then another well-known rule of law is applicable; i.e., the controlling consideration in the interpretation of a Workmen's Compensation statute is that the act must be liberally construed with all doubts resolved in favor of the claimant which is necessary to effectuate the beneficent and humane purposes of the act. *Hartz Seed Co.* v. *Thomas,* 253 Ark. 176, 485 S.W. 2d 200 (1972). Significantly, the act provides that the employer must promptly provide an injured employee medical, surgical and hospital service "as may be necessary during the period of six [6] months after the injury, *or for such time in excess thereof as the Commission, in its discretion, may require.*" (Emphasis added.) It is undisputed that the appellant, to its credit, furnished medical attention to its employee Brown far in excess of six months after the injury. As indicated, however, the statute clearly vests in the commission the authority to extend the compensation benefits past a six month period.

As to the validity of the retroactive feature of the commission's order, the act unequivocally provides that it is

within the discretion of the commission to grant a petition for a change of physician. The referee aptly stated, which the commission reiterated, that "[I]t cannot be expected for claimant to merely patiently wait while the wheels of justice turn in order to get relief from his symptoms." In *Hartz*, we reaffirmed that "[T]he public, as the bearer of the ultimate burden of compensation protection, has a material interest in the minimization of the risk of an injured employee becoming the object of public charity or public relief." There is no language in the act or inference which can fairly be drawn that the commission *cannot* award retroactive benefits. There is no evidence whatsoever that the appellee was "shopping" around for medical attention. He sought the advice and treatment of only one doctor, who appellant agrees is a qualified orthopedic surgeon, and appellee is willing to subject himself to another operation to reduce his constant and disabling pain. In the circumstances, we are firmly of the view that we cannot say the commission abused its authorized discretion.

Affirmed.