MOHAWK RUBBER COMPANY, Employer,
and THE TRAVELERS INSURANCE COMPANY,
Insurance Carrier *v.* Fred L. BUFORD,
Employee

75-364                                         535 S.W. 2d 819

Opinion delivered April 26, 1976

*Wright, Lindsey & Jennings,* for appellants.

*Youngdahl, Larrison & Agee,* for appellee.

JOHN A. FOGLEMAN, Justice. This is a workmen's compensation case. The question for decision is the liability of the insurer for medical services provided by a physician selected by the injured employee rather than one of a panel of physicians designated by the employer pursuant to Rule 21 of the Workmen's Compensation Commission, which is a partial implementation of Ark. Stat. Ann. § 81-1311 (Repl. 1960).

On 24 October 1972, appellee Fred Buford suffered a compensable spinal injury while working in the employ of Mohawk Rubber Company at its West Helena facility. He reported the injury to his supervisor but did not then see a physician and worked the remainder of that day and the following day. On the 26th of October, Buford, on his own initiative, visited his family physician at Marianna, where appellee lived. That physician made x-rays of the injury and referred Buford to Dr. Robertson, a Memphis neuro-surgeon, for an appointment on 30 October. Appellee knew at this time that appellants had retained a panel of doctors to be used by injured employees, and he had been treated by one of them, Dr. Traylor, a chiropractor, for a previous compensable injury. He also knew that there had been letters on the bulletin board with reference to the use of company doctors for treatment of job-related injuries.

On 29 October, appellee reported his injury to Mrs. Joann Smith, an employee of Mohawk charged with the administration of such affairs. He explained to her the visits he had made and arranged with doctors of his own choosing. Mrs. Smith advised him that it was a company policy that he use one of the "company doctors," a panel of five Helena medical doctors and a chiropractor retained by the company who, if necessary, would refer appellee to a group of specialists in Little Rock. She further told him that the company would not pay for the services of a physician other than a member of its retained panel or a specialist referred by one of the panel. But appellee expressed a preference for his own doctor. He objected to Mrs. Smith to having to go all the way to Little Rock which is further from his home in Marianna than is Memphis in order to see a specialist and told her, with regard to treatment by Dr. Robertson, "I'll pay it." He even-

tually agreed to accept an appointment with Dr. Traylor. Mrs. Smith phoned Dr. Traylor and arranged for an appointment for 30 October, which appellee did not keep. Instead, he saw Dr. Robertson in Memphis.[1]

Appellants controverted appellee's claim for the expenses of treatment he received in Memphis on grounds that Workmen's Compensation Commission Rule 21 permits the employer to furnish medical treatment in the first instance of its own choosing. That rule, in pertinent part, reads:

> The employer and/or insurance carrier has the right and duty in the first instance to provide prompt medical care to injured employees through physicians and hospitals of the respondents' choice.

After a hearing on the claim, a referee held appellants liable for appellee's medical expenses. On appeal to the Workmen's Compensation Commission, it was again held that appellants were liable for these medical expenses on the strength of Commission Rule 23, which permits a deviation from Rule 21, whenever good cause is shown, insofar as compliance may be found to be impossible or impractical. The commission cited as one of the circumstances where a deviation had been permitted as "when claimant receives treatment through a chain of referral initiated by the first treating physician." Appellee suggests (and the commission agreed) that, having already entered upon a chain of referral when appellants offered the services of the physicians on the panel, he was justified in going to Dr. Robertson and should be reimbursed for this expense. See *Zeeb v. Workmen's Compensation Appeal Board,* 62 Cal. Rptr. 753, 432 P. 2d 361 (1967). The commission concluded:

> In this case, the claimant saw his family physician in Marianna because it was more convenient than traveling the distance between Marianna and Helena to see a company physician. We find the claimant's actions reasonable under the circumstances and his further treatment appears to have been reasonable and

---

[1]Although the evidence is, for the most part, not in conflict, we have, as usual, viewed it in the light most favorable to the commission's findings.

necessary through a normal chain of referral. In fact, there is no contention by respondent that the treatment given was either excessive in cost or failed to achieve satisfactory results. The record reflects that the claimant has returned to normal work duties and has been released with no permanent disability even though a ruptured cervical disc is suspected, all of which strongly suggest that the conservative treatment administered was highly successful.

Appellants argue on appeal that there were no circumstances to justify a deviation from Rule 21 in this case, submitting that the relative convenience for appellee to visit his family doctor and the resultant establishment of a chain of referral were not "criteria for excusing non-compliance."

Ordinarily, the decisions of the Workmen's Compensation Commission will be affirmed if there is any substantial evidence to support them and the question of whether the evidence is substantial in nature is one of law. *Cummings v. United Motor Exchange,* 236 Ark. 735, 368 S.W. 2d 82. But, where the decision is based upon the application of the commission's own rules, we must also view it in deference to the commission's treatment of these rules.

The Workmen's Compensation Commission is empowered to make such rules and regulations for the administration of the Workmen's Compensation Law as may be found necessary. Ark. Stat. Ann. § 81-1343 (9). Any reasonable construction or interpretation given such rules is certainly entitled to great weight upon judicial review, even if it is not controlling. *Walker v. International Paper Co.,* 230 Miss. 95, 92 S. 2d 445 (1957); *Winslow v. Carolina Conference Ass'n. of Seventh Day Adventists,* 211 N.C. 571, 191 S.E. 403 (1937); *Employer's Mutual Liability Ins. Co. v. Dept. of ILHR,* 62 Wis. 2d 327, 214 N.W. 2d 587 (1974); *Russomanno v. Leon Decorating Co.,* 282 App. Div. 18, 121 N.Y.S. 2d 732 (1953); *Honeywell Inc. v. Haley,* 216 S. 2d 745 (1968); *Kramer v. Chapman & Gerber, Inc.,* 235 S. 2d 489 (Fla., 1970). See also, *Christian v. Industrial Commission,* 13 Ariz. App. 285, 475 P. 2d 770 (1971). Certainly, if an administrative agency's interpretation of its own rule is not contrary to statute or irreconcilably contrary to the plain

meaning of the regulation itself, it may be accepted by the courts. *Employers Mutual Liability Ins. Co.* v. *Dept. of ILHR,* supra. Furthermore, even if rules made by the commission may not be disregarded, they may be relaxed by it. See *In Re DaLomba's Case,* 352 Mass. 598, 227 N.E. 2d 513 (1967); *Wasson* v. *Tulsa Dairy Supplies,* 315 P. 2d 773 (Okla., 1957).

Where the commission's rules have the effect of establishing guidelines or standards, some relaxation of them, in the discretion of the commission, is permissible. *Anheuser Busch, Inc.* v. *Industrial Commission,* 29 Wis. 2d 685, 139 N.W. 2d 652 (1966). Great weight should be accorded the findings of the commission with reference to compliance with its rules and regulations, since it, being authorized to make them, is in a superior position to determine whether they have been complied with. *Libby, McNeill & Libby* v. *Alaska,* 109 F.S. 101 (D.C., Alaska, 1952). Consequently, testimony must be weighed in its strongest possible light in favor of the commission's Industrial Board findings. *American Casualty Co.* v. *Jones,* 224 Ark. 731, 276 S.W. 2d 41. The controlling consideration in the interpretation of a workmen's compensation statute is that the act must be liberally construed with all doubts resolved in favor of the claimant, which is necessary to effectuate the beneficient and humane purposes of the act. *Hartz Seed Co.* v. *Thomas,* 253 Ark. 176, 485 S.W. 2d 200.

First of all, this is not the sort of situation with which we dealt in *Sallee Bros.* v. *Thompson,* 208 Ark. 727, 187 S.W. 2d 956, in applying Ark. Stat. Ann. § 81-1320 (a) (Supp. 1975), which reads, in part:

> No agreement by an employee to waive his right to compensation shall be valid, and no contract, regulation or device whatsoever, shall operate to relieve the employer or carrier, in whole or in part, from any liability created by this act. . .

There is no assertion that appellee's comment "I'll pay it" constituted such an agreement. All parties agree that the injury was indeed compensable in nature.

The general rule is that, where a panel of physicians is

retained by an employer, as here, and an employee engages other medical services and disregards the panel made available to him, the employer is not liable for the expense of the private care. Larson's Workmen's Compensation Law § 61.12 at 10-446. Accord, *Caldwell* v. *Vestal,* 237 Ark. 142, 371 S.W. 2d 836.

Here appellee knew of the availability of the company doctors but chose to visit his family physician and the Memphis specialist to whom he was referred since both were closer to his home town, Marianna and thus more convenient to visit than the company doctors in Helena and specialists in Little Rock. In *Caldwell* v. *Vestal,* supra, where we awarded payment of medical expenses to the claimant who had made an unauthorized change of physicians, we cautioned:

Our holding is not intended to, and does not, give an injured workman unrestricted freedom to reject the medical care offered by his employer.

We said that an employee who does so acts at his own peril in disregarding a warning that an expense will not be covered by his insurer, despite the fact that there may be circumstances in which the employer will remain liable notwithstanding (see *Bell Telephone Co.* v. *Brown,* 256 Ark. 54, 505 S.W. 2d 207) but found, in that situation, no sound basis for exempting the employer from liability. So the question before the commission was, granting that appellee acted at his own peril in electing not to visit Dr. Traylor, whether his reasons for doing so were such as to justify the application of Rule 23 to permit a deviation from Rule 21.

Viewing the testimony in the light most favorable to the commission's findings, we agree that appellee's visits to the doctors in closer proximity to his home than those offered by appellants were certainly more convenient or even more practical for him. But more importantly, we find that, in these circumstances, the Commission exercised its discretion and we are unable to say that it was abused. The central rule defining the circumstances under which a claimant may himself incur compensable medical expense may be put as follows: If the employer has sufficient knowledge of the injury to be

aware that medical treatment is necessary, he has the affirmative and continuing duty to supply medical treatment that is prompt, in compliance with the statutory prescription on choice of doctors, and adequate; if the employer fails to do so, the claimant may make suitable independent arrangements at the employer's expense. Larson's Workmen's Compensation Law § 61-12 at 10-450.

In the instant appeal appellee reported the injury to his supervisor but was neither relieved from work nor referred to Mrs. Smith who administered the medical program. According to appellee, nothing specifically was said by either party at the time of the injury about his seeing a physician and his supervisor did not even take the time to report his injury until four hours later. Appellant fully informed appellee of its provisions for medical care and offered the services of the panel of physicians only when appellee reported to Mrs. Smith, at which time appellee had already procured medical attention independently. We cannot say that appellee had no justification for his independent procurement of medical care, although he admits he was aware of the existence of the panel of physicians retained by his employer. *Draney* v. *Industrial Accident Commission,* 95 Cal. App. 2d 64, 212 P. 2d 49 (1949). Under these circumstances, the Commission concluded that the appellee's independent procurement of medical treatment was reasonable. See *Zeeb* v. *Workmen's Compensation Appeals Board,* supra; cf. *Pacific Indemnity Co.* v. *Industrial Accident Commission,* 220 Cal. App. 2d 327, 33 Cal. Rptr. 649 (1963) and *Montyk* v. *Workmen's Compensation Appeals Board,* 245 Cal. App. 2d 334, 53 Cal. Rptr. 848 (1966).

Viewing the evidence most favorably to the commission's findings and giving due deference to its interpretation and application of its own rules, we cannot say that it erred.

The judgment of the circuit court affirming the decision of the commission is affirmed.