# J. R. PURDY d/b/a PURDY's FLOWER SHOP *v.* Y. M. LIVINGSTON

77-291                                             559 S.W. 2d 24

Opinion delivered December 19, 1977
(Division II)

*Thaxton, Hout & Hartsfield,* for appellant.

*Laser, Sharp, Haley, Young & Boswell,* for appellee.

JOHN A. FOGLEMAN, Justice. This appeal in a workmen's

compensation case turns upon the question whether there was substantial evidence to support the commission's finding that appellee Livingston was an employee (but not a casual one) of appellant Purdy when he was injured in a fall from a ladder. We find that there was and affirm.

Livingston was employed by Village Mall, Inc. to keep a public or mall area clean. He was free to enter into arrangements with tenants of the corporation, such as appellant, to do work for them which did not interfere with his employment. He entered into an agreement with appellant to wash the windows of appellant's flower shop once a week and carry out the trash for $12 per week and performed these services over a 13-month period. We agree with appellant that the undisputed evidence shows that, as to this work, Livingston was an independent contractor but that is not determinative of the question before us. We have held that an employee may be an independent contractor as to certain work and a mere servant as to other work for the same employer. *Brook's, Inc.* v. *Claywell,* 215 Ark. 913, 224 S.W. 2d 37; *Parker Stave Co.* v. *Hines,* 209 Ark. 438, 190 S.W. 2d 620.

Purdy did employ Livingston to do other work. Until the day Livingston was injured, this had been confined to cleaning the carpets in the flower shop. It was admitted that Livingston had done this on two or three occasions and that he had been paid for doing so. Livingston testified that Purdy furnished the equipment and supplies for shampooing the rugs and instructed him on the mixing of the cleaning ingredients. He said he was paid "by the hour" for this work. His recollection was that the rate was $2 per hour and that it took three to four hours to complete the job.

On the Saturday when Livingston was injured, he was on a ladder hanging wire for appellant. His services in doing this had been engaged by appellant's son, who was the manager of the flower shop in the mall. The wire was being hung in the mall to support floral arrangements for a Sunday show being held jointly by the flower shop and the Newport Service League in the common area of the mall.

The wire was purchased by Livingston according to instructions given by appellant's shop manager at the place the

latter directed and a charge ticket was made to appellant for the cost. Livingston testified that the ladder he was using had been borrowed from the Wal-Mart store, in compliance with directions of appellant's manager. He said he had never before borrowed any ladder. The manager specifically told Livingston how he wanted the wire hung and later came back to the place Livingston was working to show him how to space the wires. Livingston said that the manager told him exactly where to hang the wire and that he came out during the course of the work to see if Livingston was doing as he was told. There was no specific agreement as to the amount of compensation to be paid for this work, and probably none as to the manner of determining the payment to be made, although it is agreed that Livingston was to be paid for this specific job, which, according to Livingston, would require only one day and one night. Livingston said that he expected to be paid "by the hour" when the job was finished. The store manager did not recall whether he was to pay Livingston for the completed job or on a per hour basis. Although Livingston commenced the work at a time different from that specified by the shop manager, he went to this manager and obtained his approval before starting. The manager said that he had the right to tell Livingston to quit hanging the wire. Livingston was injured after he had worked only 1 ½ hours. Livingston testified that, regardless of the time of day he did the work, he was instructed by Purdy to stay at the mall to turn the lights back on when they were turned off at 10:00 p.m. by an automatic timer.

The evidence was not undisputed and there is some inconsistency in the testimony of the interested witnesses at the two hearings held in this case. In stating it, we have viewed it in the light most favorable to the commission's findings, as we must. We must also draw all reasonable inferences in that light. *Sneed* v. *Colson Corporation*, 254 Ark. 1048, 497 S.W. 2d 673.

Before we can reverse the commission, we must be convinced that fair-minded men could not have reached the conclusion they did. *Plastics Research & Development Co.* v. *Goodpaster*, 251 Ark. 1029, 476 S.W. 2d 242. It was the duty of the commission to resolve all reasonable doubts favorably to appellee. *Sneed* v. *Colson Corp.*, supra. Even where the evidence

would support a conclusion different from the commission's, or where the preponderance of the evidence would support a different result, we affirm the commission unless a reasonable mind could not reach its conclusion. *Superior Improvement Co. v. Hignight,* 254 Ark. 328, 493 S.W. 2d 424.

We cannot say that there was no reasonable basis for the commission to conclude that appellee was an employee, not an independent contractor, at the time he was injured. The rule of liberal construction applies to the factual determination of the independent contractor-employee issue, and requires that doubts be resolved in favor of the employee status. *Farrell-Cooper Lumber Co. v. Mason,* 216 Ark. 797, 227 S.W. 2d 444. The primary test is whether the will of the worker or that of the employer dominates the means and method of the work, except as to result. *Parker Stave Co. v. Hines,* 209 Ark. 438, 190 S.W. 2d 620. We there pointed out that there are numerous indicia of the relationship utilized as guides to the primary question of control, none of which is conclusive or controlling. Among those we have recognized are: the time for which the workman is employed; the right to terminate the employment without liability; the method of payment, whether by time, job, piece or other unit of measurement; furnishing, or the obligation to furnish, necessary tools and equipment and materials; and the exercise of some slight control of the manner of doing the work, where the nature of the work is such that little supervision is necessary. *Parker Stave Co. v. Hines,* supra; *Irvan v. Bounds,* 205 Ark. 752, 170 S.W. 2d 674.

We find substantial evidence that appellant had the right to terminate Livingston's employment before the job was finished, that, particularly in the light of the employment for carpet cleaning, the amount of compensation would have been calculated on a time basis, that the employer did furnish the materials and a ladder, both of which were essential to the undertaking, and that appellant did exercise some degree of control of the manner of doing the work. These indicia were sufficient to afford the commission a basis for a conclusion that an employer-employee relationship existed and we are unable to say that a fair-minded person could not reach that conclusion.

This brings us to appellant's argument that appellee was a casual employee under Ark. Stat. Ann. § 81-1302 (b) (Repl. 1976). The section excludes from the status of "employee," as defined in the act, one whose employment is casual and not in the course of the trade, business, profession or occupation of his employer. We have held that an employee is not excluded from the coverage of the act unless both exceptions exist. *Meek* v. *Brooks,* 237 Ark. 717, 375 S.W. 2d 671. Assuming, without deciding, that the employment of Livingston was casual, we find substantial evidence to sustain the commission's finding that the work being performed at the time of the injury was in the course of appellant's business and was a form of advertisement which either did, or reasonably could be expected to, benefit appellant.

The line of demarcation between what is and what is not employment in the course of trade or business of the employer is vague and shadowy and each case must, of necessity, turn largely upon its own facts or circumstances. *Buxton* v. *Dean,* 218 Ark. 645, 238 S.W. 2d 487. Appellant argues that the performance of this job in connection with a special show with no contemplation of continued future employment of a similar nature could not, by the fartherest stretch of the imagination, be considered to be in the course of the trade, business or occupation of the employer. He does not, however, cite us to any authority other than the statute itself. We have not heretofore considered the statute in the light of facts and circumstances of the nature presented here. In viewing the statute, we must construe, interpret and apply it broadly and liberally in favor of the claimant to provide compensation to him in the light of the statute's beneficient and humane purposes, resolving all doubts in favor of the claimant. *Aluminum Co. of America* v. *Henning,* 260 Ark. 699, 543 S.W. 2d 480; *Mohawk Rubber Co.* v. *Buford,* 259 Ark. 622, 535 S.W. 2d 819; *Boyd Excelsior Fuel Co.* v. *McKown,* 226 Ark. 174, 288 S.W. 2d 614; *Arkansas National Bank of Hot Springs* v. *Colbert,* 209 Ark. 1070, 193 S.W. 2d 806. The public has an interest in minimizing the risk of an injured employee becoming the object of public charity or public relief. *Jacob Hartz Seed Co.* v. *Thomas,* 253 Ark. 176, 485 S.W. 2d 200; *Spratlin* v. *Evans,* 260 Ark. 49, 538 S.W. 2d 527. These purposes leave no room for narrow or technical constructions and we construe statutes in light of them. *Hunter* v. *Summerville,* 205 Ark. 463,

169 S.W. 2d 579; *Spratlin v. Evans,* supra. See also, *Williams Mfg. Co. v. Walker,* 206 Ark. 392, 175 S.W. 2d 380. These rules of construction are applied where an exception or exemption from the terms of the act is claimed. *International Paper Co. v. McGoogan,* 255 Ark. 1025, 504 S.W. 2d 739; *Elm Springs Canning Co. v. Sullins,* 207 Ark. 257, 180 S.W. 2d 113. They are also applicable where the question is whether one is an employee under the act. *Hollingsworth & Frazier v. Barnett,* 226 Ark. 54, 287 S.W. 2d 888. They have been applied in construing statutory definitions. *E. H. Noel Coal Co. v. Grilc,* 215 Ark. 430, 221 S.W. 2d 49; *Wood Mercantile v. Cole,* 213 Ark. 68, 209 S.W. 2d 290. Furthermore, the exclusion of the casual employee is an exception, which is specific, not general, and in keeping with the usual rules of construction in favor of coverage, all doubts and implications should be resolved in favor of the general rule and against the exception. *Eddington v. Northwestern Bell Telephone Co.,* 201 Iowa 67, 202 N.W. 374 (1925); *Heilinger v. City of Sheldon,* 236 Ia. 146, 18 N.W. 2d 182 (1945); *National Cast Iron Pipe Co. v. Higginbotham,* 216 Ala. 129, 112 S. 734 (1927); *Garrison v. Gortler,* 234 Ia. 541, 13 N.W. 2d 358 (1944).

There are many different types of statutes excluding or excepting the casual employee from coverage. Some do not incorporate the "course of business" qualification at all. Others make the casual employment test and the "course of business" test alternates. None of the cases interpreting such statutes are helpful here. Another difference between our statute and most others is the absence from ours of either adjective "usual" or "regular" as a limitation on "the course of the trade, business, profession or occupation of the employer." The significance of the omission of these words is great. Where the course of business is limited by one of these modifiers, the clause is much more restrictive than when they are absent. The language in our statute is much more inclusive than it would be if the exception had applied in the "usual" or "regular" course. *Garrison v. Gortler,* supra. This significance was pointed out in *Speed v. Page,* 59 S. 2d 138 (La. App., 1952), where it was held that there was a statutory coverage of an employee when he was engaged in an employment with reference to, in connection with, or in promotion of, the employer's trade, business or occupation. See also, *Crow v. Hosier,* 66 S. 2d 380 (La. App., 1953).

We must construe the statutory language "not in the course of the trade, business, profession or occupation of his employer" favorably to appellee, as the commission did, if that can be done without doing violence to the plain meaning of the words. A reasonable construction of these words permits coverage under the act when, even though the employment is casual, it is in connection with, or promotion or furtherance of the employer's trade, business or occupation. We would certainly say that an employee who was injured in performing duties assigned to him in the promotion or furtherance of the employer's trade, business or occupation was acting in the course of his employment. See *Mullins* v. *Ritchie Grocer Co.*, 183 Ark. 218, 35 S.W. 2d 1010. In considering the application of a "usual course of business" exclusion, it has been said that the words should be accorded the same liberal view taken in construing the words "within the scope of the employment." *State* v. *District Court*, 141 Minn. 83, 169 N.W. 488 (1918). See also, *National Cast Iron Pipe Co.* v. *Higginbotham,* supra. The work Livingston was doing was obviously in promotion of the business of the flower shop. Thus, there was substantial evidence that he was not excluded from coverage when injured.

The judgment is affirmed.

We agree. HARRIS, C.J., and HOLT and HOWARD, JJ.