Eddington *v.* City Electric Co.

5-3225      376 S. W. 2d 550

Opinion delivered March 16, 1964.

*Elbert S. Johnson,* for appellant.

*Reid & Burge,* for appellee.

PAUL WARD, Associate Justice. This is a Workmen's Compensation case. Claimant, Floyd Eddington, was denied compensation by the full commission, and this finding was approved by the circuit court.

On appeal to this Court we are asked to resolve only one issue: Is the finding of the full commission (as approved by the circuit court) supported by substantial evidence? If it is so supported it is our duty to affirm the judgment of the trial court—as is established by decisions too numerous to require mention. What constitutes substantial evidence is a question of law. See: *Boyd Excelsior Fuel Company* v. *McKown,* 226 Ark. 174, 288 S. W. 2d 614, and *Cummings* v. *United Motor Exchange,* 236 Ark. 735, 368 S. W. 2d 82.

After a careful examination of the testimony and the applicable law we have reached the conclusion that there is no substantial evidence to support the finding of the commission in this case and that, consequently, the judgment of the trial court must be reversed. In support of that conclusion we set out hereafter at some length the pertinent testimony, after first giving the factual background.

The claimant (appellant), Floyd Eddington, is a married man 44 years old. He had been a pipe fitter for 15 years, and had worked for the City Electric Co.

(appellee) for about a year. As such employee he helped to install boilers and furnaces by putting the sections in place and adjusting the pipe connections. He was injured in June 1962 while helping install a boiler for the school at Luxora. Since the injury he has been able to do very little, if any, work. The decisive and difficult question is whether there was a causal connection between his injury and his later physical condition. We find no difficulty in concluding (from a study of the record) that claimant did suffer an injury and that his physical condition was thereafter impaired.

*Lay Testimony.* According to claimant: On Thursday, June 14, 1962 he and a Mr. Fair were engaged in installing a boiler of three sections—each weighing 500 to 600 pounds; it was hot (100 degrees in the shade) and humid, and they had to move each section quite a distance over muddy ground by use of a two wheel cart and then lift it in place; while they were lifting one of the heavy sections in place claimant hurt himself—said he was blind as a "bat" and his head was spinning; they took it easy the rest of the day. The following day (Friday) they worked but claimant said he felt bad, weak and used up. On the following Monday claimant went back to work, and while he and his helper (his brother, and also a pipe fitter) were installing some two inch pipe he blacked out, staggered and fell—hitting his head on the concrete floor; he was taken home and Dr. Godley was called. According to claimant Dr. Godley said the symptoms indicated heat prostration; the next morning he blacked out in the bathroom, and was then admitted to the hospital. Claimant said that on Monday the temperature was 102 degrees in the shade. He also said he had never previously had any physical ailments, except one minor injury about ten years previously when he lost no time at work.

The above testimony of claimant was corroborated by his helpers. Also, one Louis Carucci, a pipe fitter and an employee of appellee testified he had known claimant some ten years and that he never heard him complain about any physical ailments. He also stated

that claimant needed more help on the job he was doing, but that the company was busy on other jobs.

It is undisputed that claimant had seven or eight convulsive seizures after June 1962 and that he has not worked since the injury.

*Medical Testimony.* Claimant was first examined by Dr. Godley. In essence Dr. Godley testified: I cannot say positively that loss of body fluid produced by prolonged heavy work in the hot sun and the blow on his head were the primary cause of appellant's condition.

Q. "Then I will ask you if, in your opinion these were the precipitating or aggravating factors?

A. "Yes, sir. I think so."

"...I myself thought Mr. Eddington's difficulty started on the day that he fell and was precipitated by the heat and/or hitting his head on the ground and that since that time he has been ill and no positive diagnosis has been made."

He further stated that claimant is still suffering from convulsive seizures, and he has not been discharged as well and able to go back to work.

Dr. Phil Orphet, who lives in Memphis and practices internal medicine, examined claimant at the request of Dr. Godley. In essence Dr. Orphet testified that he made laboratory studies and found claimant's skull was not indented or fractured; his impression was that claimant had fainting and swooning spells, but the origin was unknown to him; that the loss of body fluids and sodium produced by prolonged heavy work in the hot sun might have been a precipitating factor to claimant's condition, but other things might have caused it; he could not say claimant was able to return to work; striking his head on the concrete floor could have caused a cerebral concussion—the brain tissue could be bruised even though the skull was not fractured; it is possible that a light concussion might cause a hemorrhage where there is a weakened blood vessel. He advised that claimant be ex-

amined by Dr. DeSaussure, a neurologist located in Memphis.

Dr. DeSaussure, who examined and X-rayed claimant, testified in essence: The Xray of the skull showed two or three suspicious areas—Xrays will not show damage to brain tissue; brain tumor was ruled out; he could not, from his examinations, determine the cause of claimant's condition; he feels that claimant could continue his line of work as a pipe fitter but didn't say when; it takes a fair degree of heat to damage the brain so as to cause convulsive seizures, but extreme heat can cause brain damage.

From the above it appears there is no positive medical evidence that claimant's present physical condition was not caused or aggravated by his injury. Giving the greatest possible weight to the doctors' testimony, it only proves they do not know what caused claimant's present physical condition. That being the situation we think this case is controlled by the case of *Hall* v. *Pittman Construction Co.*, 235 Ark. 104, 357 S. W. 2d 263, where we said:

"If the claimant's disability arises soon after the accident and is logically attributable to it, with nothing to suggest any other explanation for the employee's condition, we may say without hesitation that there is no substantial evidence to sustain the commission's refusal to make an award."

Apply the above language to the facts in the case before us and a reversal is clearly indicated. The disability arose immediately after the accident, the accident occurred while claimant was working, and there is nothing to suggest any other explanation for claimant's disability —the medical testimony being negative. Similar also, is the case of *Clark* v. *Ottenheimer Brothers*, 229 Ark. 383, 314 S. W. 2d 497. There, in reversing the commission, we said:

"There was no evidence and no opinion to the effect that appellant's injury was not or could not have been

caused by the heavy lifting she did. None of the four doctors who treated her, including the one who operated on her and removed the disc, was ever asked if the injury could have been caused by the work she was doing, and none expressed an opinion about the matter one way or the other. On the other hand the first doctor who treated appellant gave this written statement: 'My opinion is the work she was doing at Ottenheimer Bros. was the causative factor to her troubles'."

In this case, it will be recalled, the first doctor (Dr. Godley) made a similar statement with reference to claimant.

We point out also that our Workmen's Compensation law should be liberally construed, and that doubtful cases should be resolved in favor of the claimant. See: *Boyd Excelsior Fuel Company* v. *McKown, supra,* and *Cummings* v. *United Motor Exchange, supra.*

In accord with the conclusions heretofore expressed, the judgment of the trial court is reversed, and the cause is remanded to the circuit court with directions to remand to the commission for further proceedings consistent with this opinion.

Reversed and remanded.