Dessie BOSWELL, Widow and James BOSWELL,
Minor Child of George BOSWELL, Deceased Employee
v. Elmer DAVIS and ROCKWOOD
INSURANCE COMPANY

CA 79-253                                             595 S.W. 2d 942
Court of Appeals of Arkansas
Opinion delivered February 20, 1980
Released for publication March 26, 1980

*Eugene Hunt,* for appellants.

*Shackleford, Shackleford & Phillips,* P.A. for appellees.

JAMES H. PILKINTON, Judge. This is a workers' compensation case. A claim for dependency benefits was filed by appellants, the widow and child of the decedent. Appellants took the position that the death of Mr. Boswell, who died on May 16, 1977, was related to a compensable injury which he had sustained on August 23, 1976. Appellee denied that the death of decedent was compensable within the meaning of the Arkansas Workers' Compensation Act. A hearing was held before an Administrative Law Judge, and subsequently the deposition of a Dr. Bill Stewart, a thoracic surgeon, was

taken and made a part of the record. The ultimate opinion expressed by Dr. Stewart was contrary to all other medical evidence, and contrary to his initial opinion, and prior statements, he had made and which were in evidence. Subsequently the Workers' Compensation Commission entered its opinion finding that the claims of appellants should be denied on the ground that they had not met their burden of proof in establishing that the decedent, George Boswell, sustained an accidental injury arising out of and in the course of his employment which resulted in his death. Appellants have appealed from that determination by the Commission.

We find no substantial evidence to support the Commission's determination.

The sole issue before this court is whether the retrospective conclusion of Dr. Bill Stewart, unsupported by lab reports (and contradicted by all the other evidence, including his own prior statements) that Mr. Boswell's cyst was *not* traumatic in nature, constituted substantial evidence under the law. We hold that it did not, and that this case must be reversed and remanded.

The decedent had been employed by Elmer Davis Logging Company for about eight years. He was a good workman, and had not lost any time from work due to illnes in more than 18 years prior to the accident. Mr. Boswell was a loader operator and on the day of his injury was loading logs. A fellow worker saw that a tree six to eight inches in diameter was about to hit Mr. Boswell and attempted to warn him, but Mr. Boswell didn't see it in time. The tree hit Mr. Boswell right in the face and knocked him off the loader. He fell backwards, off the rear of the loader, and tumbled off a little step. When Mr. Bobby C. Wheeler, the co-worker, reached him, Mr. Boswell was lying on the ground. Mr. Wheeler sent for help and then took the injured man to the doctor. The accident occurred on August 23, 1976. The injury was recognized as compensable, and decedent was paid temporary total disability compensation from that time until his death.

The record shows that Mr. Boswell had been married to

Mrs. Dessie Boswell for 29 years. They were the parents of five children, but all were adults except the youngest son, James, who is in the ninth grade. Mrs. Boswell and her son were totally dependent upon decedent for support. They are now trying to live on Social Security benefits and have no other income. Mrs. Boswell said that her husband had diabetes, but it was controlled and he never took off from work. When the accident occurred, Mr. Boswell was taken to the Bradley County Hospital, and was attended by the family physician, Dr. Marsh.

After discharge from the hospital, and until his death, Mr. Boswell complained about his back and right side. His wife said he could not be turned on his right side due to pain; and that he could not stand for anyone to touch his right side. He constantly complained of pain a few inches beneath his armpit. The evidence is undisputed that Mr. Boswell would cough blood which would be expelled both from his mouth and nose. After the injury he could not bathe himself, and could not sit at the table. His wife attended to all his personal needs. He never was able to work again.

Mr. Boswell lost weight continuously from the time of his injury until he died. He wore a back brace and used a cane in his left hand. He could not hold the cane in his right hand. Sores broke out on his right side and on the lower part of his body before he died. There were no sores on the left side of his body. Dr. Marsh admitted Mr. Boswell to the Bradley County Hospital five days before he died. On recommendation of Dr. Marsh, he was transferred to a hospital in Little Rock one day before his death.

The discharge summary from Bradley County Memorial Hospital September 9, 1976, reads in material part as follows:

> Patient was admitted to the hospital with injury to his head and chest. He began having rather severe chest pain soon after admission . . . repeat chest X-rays showed a cavitation in the right upper lobe and disturbance at the sixth thoracic vertebra . . . He is transferred to Dr. Stewart for evaluations of his chest problem . . .

The discharge summary authored by Dr. Bill Stewart dated September 9, 1976, disclosed the following relevant portions:

> . . . A definitive diagnosis was not made on the cavity but it was felt that it represented a traumatic cavity in the right lung in as much as it was situated directly beneath a chest wall injury, there was tenderness in the chest wall . . .

The Medical Report from William Steele, M.D., to Bill Stewart, M.D., September 20, 1976, discloses:

> "It was felt that the wedging of the thoracic was fresh and due to the incident of trauma and not to another process . . . "

The Medical Report of Dr. Bill Stewart dated October 13, 1976, relates the decedent's chest condition as:

> " . . . The chest still demonstrated the cavitary appearing lesion in the right mid lateral lung but the walls are much thinner and it appears that this is probably resolving."

The Medical Report of J. W. Marsh, M.D., on November 12, 1976, reported the following:

> " . . . Regarding his chest wall injury. He was found to have a traumatic cyst of lung . . . "

Bill Stewart, M.D. reported on February 7, 1977, the following:

> " . . . I do not hear anything in his chest, but X-rays show the sizable infiltrate in the right mid lung . . . "

The discharge summary of Bill Stewart, M.D. on February 21, 1977, reported, inter alia:

> "Patient was hospitalized 5 months ago because of cavitary appearing lesion in the right mid lung . . . he

has some cough and some sputum . . . "

On August 25, 1977, three months after the death of Mr. Boswell, Dr. Bill Stewart reversed his opinion and wrote a discharge summary saying that "the patient seems to have fungal disease . . . "

The medical evidence in the record clearly shows that it was the belief and opinion of Dr. Marsh, Dr. Stewart and Dr. Steele, from the outset, that the cavitary lesion in the right lung of the decedent was due to the incident of trauma that occurred August 23, 1976. This conclusion, held by all of the doctors who saw and treated Mr. Boswell during his lifetime, was finally contradicted by Dr. Bill Stewart three months after Mr. Boswell's death without anything, but his bare opinion, to back it up. His only explanation for his apparent contradiction with all other medical testimony, including his own prior opinions, was "this is a changing of my opinion simply because it did not work out the way I thought a traumatic cavity should". Dr. Stewart admitted that laboratory work and cultures done did not support his latest theory. He was frank to say he did not know what caused Mr. Boswell's death. We are persuaded that Dr. Stewart's late conclusion, which was the only medical or other evidence in the record to contradict the "traumatic cyst" hypothesis, is based upon sheer speculation. Dr. Stewart admitted in his deposition that nothing was found to support his new conclusion.

*Larson's Workmen's Compensation Law,* Vol. I, Sec. 13:00, states in part:

> "When the primary injury is shown to have arisen out of and in the course of employment, every natural consequence that flows from the injury likewise arises out of the employment . . . "

Sec. 13:11 of *Larson's, supra,* provides, inter alia:

> " . . . once the work connected character of an injury . . . has been established, the subsequent progression of that condition remains compensable so long as the worsen-

ing is not shown to have been produced by an independent non industrial cause . . . "

Our Supreme Court set out one of the policy considerations underlying the Arkansas Workers' Compensation Act and stated in *Purdy* v. *Livingston,* 262 Ark. 575, 559 S.W. 2d 24 (1977), "In viewing the statute, we must construe, interpret and apply it broadly and liberally in favor of the Claimant . . . The public has an interest in minimizing the risk of an injured employee becoming the object of public charity or public relief."

*Floyd Eddington* v. *City Electric Company,* 237 Ark. 804, 376 S.W. 2d 550 (1964) seems to throw light on the pivotal issue in this case, where it is stated:

> " . . . It appears there is no positive medical evidence that Claimant's present condition was not caused . . . by his injury. Giving the greatest possible weight to the doctor's testimony, it only proves they do not know what caused Claimant's present physical condition. That being the situation, we think this case is controlled by *Hall* v. *Pittman Construction Company,* 235 Ark. 104, 357 S.W. 2d 263, where we said, 'If the Claimant's disability arises after the accident and is logically attributable to it, with nothing to suggest any other explanation for the employee's condition, we may say without hesitation that there is no substantial evidence to sustain the Commission's refusal to make an award.' "

The foregoing guidance finds ready application to the facts of this case. The peculiar meshing of the lay testimony in this record and the medical evidence demonstrates that appellants did meet their burden of proof.

This Court recently considered the wisdom of a holding in a Rhode Island case after a review of relevant Arkansas Law in deciding *American Can Co.* v. *McConnell,* 266 Ark. 741, 587 S.W. 2d 583 (Ark. App. 1979), and said:

> . . . soon after an accident and at the very place where

the force was applied and with symptoms observable to the ordinary person, there arises, in the absence of believed testimony to the contrary, a *natural inference that the injury,* whatever may be the medical name, *was a result of the employment.*"

Appellants argue a second point in which we find no merit; however, for the reasons already discussed, this case must be reversed and remanded inasmuch as we find that appellants are entitled to death benefits as dependents of the deceased worker as provided by the Arkansas Workers' Compensation law.

Reversed and remanded.

NEWBERN AND PENIX, JJ., dissent.

MARIAN F. PENIX, Judge, dissenting. We might argue, with some merit, that six Court of Appeals judges can better decide a Workers' Compensation case *de novo* exclusively from a cold, typed record than can three Commissioners.

The legislature might well investigate the law that provides for an Administrative Law Judge, trained in the law, to hear live witnesses plus some depositions and reports and then render a decision in a Workers' Compensation case. However, the Administrative Judge's decision, when appealed, goes on to three Commissioners — one lawyer and two laymen. They decide the case *de novo* and their findings take on the high dignity of a jury verdict — reversible by us only for an absence of substantial evidence. Ark. Stat. Ann. 1947 (1979) Repl.) § 81-1325. But, we were not appointed by the Governor to make laws, only to construe those which have been made. We are restricted to viewing the evidence in a light most favorable to the Commission's findings and to drawing all reasonable inferences in that light. We do not have the privilege of deciding whether the testimony would have supported contrary findings, but, rather whether the evidence supports the findings made by the Commissioners. Where medical testimony is conflicting, the resolution of that conflict is a fact for the Workers' Compensation Commission. *Purdy* v. *Livingston,* 262 Ark. 575, 559, S.W. 2d 24 (1977); *Barksdale Lumber Co.* v. *McAnally,* 262 Ark. 375, 557 S.W. 2d 868 (1977).

In the words of the present Chief Justice of our Supreme Court " . . . we must continue to determine whether reasonable minds could reach the conclusion reached by the Commission, not whether the evidence would have supported another conclusion, or even whether the preponderance indicated a different result." *Oak Law Farms* v. *Payne,* 251 Ark. 674, 474 S.W. 2d 408 (1972).

There is substantial evidence in this case to support the Commission's findings.

I respectfully dissent.

DAVID NEWBERN, Judge, dissenting. The majority seems to say Dr. Stewart's opinion should not be considered substantial evidence because he changed his mind. His testimony was that he had not reached a final diagnosis of traumatic cyst because the laboratory work was not in. His tentative diagnosis was that the cyst was trauma related. When he saw that the cyst did not improve, as in his medical opinion it should have, and when he saw that a second cyst developed, he realized these were not caused by the injury.

I think that, had I been the trier of fact in this case, I would have held the preponderance of the evidence favored the claimant. But as the majority recognizes, the job of this court is to determine if the result reached by the commission is supported by substantial evidence. I certainly agree with the conclusion we reached in the case of *American Can Co. v. McConnell,* 587 S.W. 2d 583 (Ark. App. 1979), however, it must be remembered that there we affirmed the commission's decision in favor of the claimant. I would cite that very case in an opinion affirming the commission here, as I believe Dr. Stewart's testimony, despite the fact he changed his tentative conclusion in the process of reaching his final one, constituted substantial evidence.