Mary Naomi JOHNSON, Employee *v.*
VALMAC INDUSTRIES, Self-Insured Employer

CA 80-37                          599 S.W. 2d 440
Court of Appeals of Arkansas
Opinion delivered May 14, 1980
Released for publication June 4, 1980

*Tatum & Sullivan, P.A.*, for appellant.

*Wright, Lindsey & Jennings*, for appellees.

DAVID NEWBERN, Judge. In this workers' compensation

case the claimant fell while taking a "break" in the company's breakroom. She struck her back on the floor and her neck on the picnic table at which she was attempting to seat herself. She was seen by a doctor for symptoms she felt were directly related to her fall. She later was referred to other doctors who diagnosed a malignant brain tumor. The question for the commission was whether her fall had aggravated her brain tumor, thus making her treatment, which ultimately included a craniotomy and partial removal of the tumor, compensable. The commission found in favor of the employer, and we are asked to reverse because the "preponderance of the evidence does not support the opinion of the . . . commission." We have no authority to address that issue, thus we will treat the appeal as one questioning whether there was substantial evidence to support the commission's determination.

Two physicians testified by deposition. Dr. Pennington, the local physician who treated the claimant for her initial symptoms resulting directly from her fall, said he felt "in retrospect" the tumor probably caused the claimant's loss of coordination which resulted in the fall. At some points in his testimony Dr. Pennington said the fall "possibly aggravated" the tumor. At other points, he seemed to take a more definite stance, saying the fall "more than likely" accelerated the growth of the tumor. An example of the equivocal nature of his testimony is as follows:

Q. Now you stated in a later report that the tumor could have been aggravated, I'm referring to that report of May 29 I believe, you said that the fall this patient had while working at Valmac could have aggravated her brain tumor. Is this your opinion that the fall did aggravate the tumor or simply that this is a possibility?

A. I believe I could say that it did. The work and the fall.

Dr. Williams, the surgeon who performed the craniotomy, was equally equivocal. His statement that the trauma could have aggravated the tumor, and could have caused the symptoms to appear sooner than in the natural

course of the tumor's growth, were based upon the history given to him by friends and relatives of the claimant. At one point, however, he testified that a "friend" had said the personality change observed in the claimant had been coming on for "a few months," which would have placed it at a time before the fall occurred. Dr. Williams testified he could not recall whether there was evidence of external head injury, and he said he found no evidence of a contusion to the brain. His testimony was that a brain tumor causes symptoms such as loss of coordination and body function when, because of its growth, it fills the cranial cavity normally occupied by brain tissue, thus putting abnormal pressure upon some portion of the brain. He said trauma, such as a fall, resulting in a contusion to the brain and tumor could cause an enlargement which would bring on the symptoms prematurely. He further testified he knew of no medical evidence that trauma could cause the appearance or accelerated growth of such a tumor. Although Dr. Williams clearly stated the aggravation was a possibility in this case, his testimony culminated in the following exchange:

Q: All of the symptoms that she manifested would have developed from a malignant brain tumor even without the intervention of some trauma.

A: Eventually.

Q: Is there any way you can accurately predict how fast these symptoms would come on?

A: No.

Q: Well, are you speculating that there might be some connection between the fall and the brain tumor or —

A: Yes, I have no medical proof of that. I can only take the word of the family that something happened to her.

Q: You were not able to substantiate it by anything that you found during the course of your operation or from your physical examination of her?

A: No, but again it wouldn't be uncommon that I wouldn't be able to substantiate it.

Q: You're saying I take it that this might have aggravated her condition, but you couldn't say with any degree of certainty that it did?

A: That's correct.

The claimant and her husband both testified that her condition had deteriorated steadily since the fall. The husband said had there been evidence of symptoms before that time, he would have noticed them. From their combined testimony, it appears the fall occurred on a Wednesday morning, and the claimant continued to work the remainder of that week. She took "vacation" beginning Monday of the following week, in hopes she would recover from pain she felt was due to her fall, and when she failed to improve she sought medical attention which ultimately resulted in the discovery of the tumor.

The standard of review by this court of cases of this nature is set out clearly in Ark. Stat. Ann., § 81-1325(b)(4) (Supp. 1979). We are permitted to reverse the determination of the commission if its "order or award was not supported by substantial evidence of record." The Arkansas Supreme Court has struggled against this standard in many cases. See, e.g., Eddington v. City Electric Co., 237 Ark. 804, 376 S.W. 2d 550 (1964), where the "liberal construction" rule was stated but the "substantial evidence" rule was recognized as controlling. In one case our supreme court, or at least three of its justices, faced squarely up to the problem of applying this strict, statutory standard of review in this area of social and remedial legislation which is universally said to require "liberal" treatment. Boyd Excelsior Fuel Co. v. McKown, 226 Ark. 174, 288 S.W. 2d 614 (1956). In his dissent in that case, Justice George Rose Smith made it clear that it is impossible to reconcile a holding, based on the "liberal construction" doctrine, that all doubtful cases must be resolved in favor of the claimant with the statutory requirement that the commission be affirmed in any case where there is substantial evidence to support its decision. Like Justice Smith, we have

no quarrel with the philosophy of workers' compensation, and certainly none with the notion that the *act should be interpreted* whenever there is doubt as to its meaning, in favor of the claimant. But to say that when there is doubt remaining as to a *factual* issue, and the doubt has been caused by conflicting or equivocal testimony, the resolution of that doubt by the commission must always favor the claimant, is to rob the commission of its fact-finding function which is definitively prescribed by the statute and not to be deprived by us.

This court has had occasion to use both the "substantial evidence" standard of review and the "liberal construction" standard of statutory interpretation in the same case. *Continental Insurance Co., et al.* v. *Richard, Adm'x*, 268 Ark. 671, 596 S.W. 2d 332 (Ark. App. 1980). They are not inconsistent when applied to their respective, proper areas of concern. In *Watson* v. *Conway Memorial Hosp.*, 268 Ark. 680, 595 S.W. 2d 946 (Ark. App. 1980), we also referred to both of these concepts. If the latter decision left doubt as to our intent, we wish to erase it here by saying we do not intend to deny or subvert the clear legislative mandate of the "substantial evidence" rule.

In *Copeland* v. *Dancers Corp.*, 268 Ark. 650, 595 S.W. 2d 940 (Ark. App. 1980), we reversed the commission because we could find no substantial evidence in support of its determination that a compensable injury had not aggravated a pre-existing condition. We would have affirmed the commission in that case had we been able to say the evidence singled out by the commission to support its order was substantial. There, we simply felt the commission had misinterpreted a physician's testimony. When the interpretation we deemed correct was placed upon that testimony, it left no substantial evidence to support the order.

The case before us now is different. Here we have testimony from which a reasonable fact-finder could conclude there was no aggravation of the claimant's pre-existing condition. Although the testimony of the doctors to the effect that the aggravation could have ocurred *could have* been given credence by the commission, the question it had to resolve was whether a preponderance of the evidence showed the aggravation *did* occur. In cases where the medical testimony

is as uncertain as it is here, and where it could so clearly lead the finder of fact to either of two contrary conclusions, we will not reverse the commission, as the "substantial evidence" supports whichever determination it makes. That is not to say, that in cases where we feel further development of the evidence would be productive we would not reverse and remand for that purpose, but that is not the case before us.

Aggravation cases are difficult. After addressing evidentiary and review problems surrounding the cases involving aggravation of a coronary weakness, Professor Larson says the following with respect to cancer cases:

> Similarly, there is controversy on the relation between trauma and the causing or spreading of cancer. Thus, Dr. Carroll J. Bellis has written that "[t]rauma as an inciting or aggravating mechanism does not have a place in cancer development, and schooled pathologists do not include injury as a mechanism by which cancer is initiated or stimulated." It will be found, then, that denials of compensation in this category are almost entirely the result of holdings that the evidence did not support a finding that the employment contributed to the final result. Whether the employment aggravated, accelerated, or combined with the internal weakness or disease to produce the disability is a question of fact, not law, and a finding of fact on this point by the commission based on any medical testimony, or, in the commoner afflictions where the commissioners themselves have acquired sufficient medical expertise, based on the commission's expert knowledge even without medical testimony, will not be disturbed on appeal. [1 Larson, Workmen's Compensation Law, § 12.20, pp. 3-316 and 3-329 (1979). Footnotes omitted.]

We hold that if there is substantial evidence in the record that aggravation of a pre-existing malady did not occur, we will decline to reverse the commission's finding in favor of the employer. See, *Starrett* v. *Namour*, 219 Ark. 463, 242 S.W. 2d 963 (1951). In this case, we find substantial evidence to support the commission's decision.

Affirmed.

JUDGE HOWARD dissents.

GEORGE HOWARD, JR., Judge, dissenting. It is settled law that whether the decision of the Workers' Compensation Commission is supported by substantial evidence is a question of law and not a question of fact. A review of the medical testimony in this record dictates a holding that the claimant — a 57 year old white female, possessing a ninth grade education, and who was employed by respondent for a period of 25 years — sustained an injury to her back and neck, when she fell on a concrete floor striking her neck on a table, which aggravated a pre-existing brain tumor.

The medical evidence in the record sustaining this posture is as follows:

Dr. James O. Pennington, claimant's family physician, testified:

Q. In what way or mechanically, Doctor, how do you think the fall which you described that you recall aggravated the tumor?

A. Well, just the stress from her working with this tumor and the strain and the jar from the fall, although she didn't hit anything the jerking of her neck and the jerking of her spine and the sudden fall to the floor would naturally cause an impact on her head and neck and spine.

Q. What if the aggravation, or if it did in some way affect the tumor in what way did it affect the tumor? What did that circumstance do as far as the tumor was concerned in your opinion?

A. It could have caused swelling of the tumor and possibility of the — I would suspect that area was very vascular and it could have caused a little hemorrhage of that area and *could have speeded up the onset of symptoms from the tumor*. (Emphasis added)

Dr. Ronald N. Williams, a neurologist, testified:

Q. Based on your examinations of Mrs. Johnson and the surgery and the history that you obtained from her family, both before and after surgery, how likely is it that her fall aggravated the tumor?

A. I could not put a probability on that. As I said I rely solely on the history when I do something like that. And relying on history, I'm relying on the people that gave it to me and I believe they are honest people, and according to them something happened to this lady following that fall.

. . .

Q. If these people are correct in their history, we can't know that, but assuming they are for the purpose of that question, could you say it is more likely than not that it did aggravate the tumor?

A. Yes, I think so.

Q. And when you are able to say that then does that also mean that the history of the fall is not inconsistent with the other symptoms?

A. It's not inconsistent with aggravating the progression of the symptoms caused by the brain tumor.

Q. There's nothing about Mrs. Johnson's symptoms or her tumor or the development of it that would lead you to believe that was no trauma?

A. No, I have to accept the history as it was given to me.

Q. And you don't have any trouble accepting that history do you?

A. No.

An injury which brings about an aggravation of a pre-existing condition is compensable under the Workers' Compensation Law. *Hamilton* v. *Kelly-Nelson Construction Co.*, 228 Ark. 612, 309 S.W. 2d 323 (1958); *Tri-State's Construction Co.* v. *Worthen*, 224 Ark. 418, 274 S.W. 2d 352.

In *Boyd Excelsior Fuel Co.* v. *McKown*, 226 Ark. 174, 288 S.W. 2d 614 (1956), the Arkansas Supreme Court made the following relevant comment:

> "Many times, we have held that the finding of the Commission will be sustained if supported by any substantial evidence. . . . Here, it does not appear that there is any substantial evidence to support the Commission's finding. The evidence in this case is overwhelming to the effect that the claimant is permanently and totally disabled, and that his disability is due to the condition of his lungs; circumstantial evidence points to silicosis as the cause of the disability. All of the doctors who examined the claimant over a period of time stated that his disability is due to silicosis; evidence to the contrary is very weak and not substantial. Whether there is substantial evidence is a matter of law . . .

> "The law of this State is that workmen's compensation cases should be broadly and liberally construed, and that doubtful cases should be resolved in favor of the claimant. . . .

> "If this law has any meaning or force or effect, it should be applied here. . . ."

The majority recognizes the rule expressed in *Boyd*, but dwells on a dissenting opinion in *Boyd* and then concludes:

> ". . . But to say that when there is doubt remaining as to a *factual* issue, and the doubt has been caused by conflicting or equivocal testimony, the resolution of that doubt by the commission must always favor the claimant, is to rob the commission of its fact-finding function which is definitely prescribed by the statute and not to be deprived by us."

636

But the majority obviously fails to perceive that the basic purpose of workers' compensation is to provide for employees, or their dependents, economic aid where employees have suffered injuries or death in connection with their employment. To further this socio-economic purpose, where one of two opposing inferences would support an award and the other would defeat it, a construction favorable to claimant should be adopted if factually sound even though an equally substantial inference thereby fails. *Simmons National Bank* v. *Brown*, 210 Ark. 311, 195 S.W. 2d 539 (1946).

For the reasons indicated, I respectfully dissent.